IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

No. 2:08-CV-47-BO

| | |
|---|---|
| GWEN HART, JOSEPH DRUTHER, LUCILLE DRUTHER, EDWARD WUELLNER, and JENNIFER WUELLNER individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LOUSIANA-PACIFIC CORPORATION<br><br>Defendant. | ORDER |

This matter is before the Court on Plaintiffs' Motion for Class Certification. The Motion is GRANTED.

I. STATEMENT OF THE CASE

Plaintiffs filed this case as a putative class action in Dare County Superior Court against Louisiana-Pacific Corporation (LP) on October 22, 2008. On November 21, 2008, LP removed the case to this Court based upon diversity jurisdiction under the Class Action Fairness Act of 2005. Plaintiffs amended their complaint on September 21, 2009 (DE # 41) and LP filed a timely answer to the amended complaint. Following discovery, Plaintiffs have filed their motion for class certification on November 11, 2010. The Defendant subsequently filed a Motion in Opposition, and the Plaintiffs filed a Reply.

## II. FACTS

Plaintiffs claim revolves around the product Trimboard, an exterior building trim. Trimboard is manufactured by ABTCO, who is owned by LP. All the named Plaintiffs are homeowners with Trimboard on their homes. Plaintiffs assert a claim for breach of express warranty on behalf of "[a]ll persons in the State of North Carolina who own a home, office or other building in which ABTCO's Trimboard has been installed in the past ten years."

Plaintiffs allege that the Defendant designed, marketed and sold Trimboard to be used as an exterior trim product on homes, apartments, condominiums, buildings and other structures. Plaintiffs also allege that Defendant held itself out as knowledgeable in the design and manufacture of exterior building products and represented that Trimboard was a high quality product that was superior to wood for use as exterior trim. Contrary to these assertions, the Plaintiffs allege that Trimboard is actually defective in design and manufacture because it prematurely deteriorates, rots, swells, buckles, splits, checks, cracks, delaminates, absorbs water, warps and/or bulges under normal conditions and exposure; it causes consequential water and structural damage; and it promotes the growth of health-threatening mold, mildew, fungi, and insect infestation in the structures in which it is installed. All the named Plaintiffs claim to have suffered at least some of these problems.

Trimboard is accompanied by a 10 Year Limited Express Warranty (the "Limited Express Warranty"). Under the Limited Express Warranty, ABTCO Building Products Corporation warrants its TrimBoard, exclusive of finish, against defects in material delamination, checking, splitting, cracking and chipping of the basic substrate due to faulty manufacturing processes for a period of ten years from the date of installation under normal conditions of use and exposure, providing the trim is properly stored, installed, maintained, and protected as

specified in ABTCO's Application Instructions. (Exhibit A). The "sole" remedy under the warranty is either twice the cost of the trim or the cost of replacing the trim, depending on the year of the warranty.[1]

Plaintiffs argue that the warranty is void as unconscionable. They allege detailed facts showing that Trimboard was defective from the moment it left its manufacturing, that ABTCO knew of the defect, and that ABTCO failed to disclose the defect. Plaintiffs further allege that Defendant deliberately crafted the warranty to minimize customer recovery regarding the defect. For example, the Plaintiffs argue that the installation instructions were defective so that the installers would necessarily have to deviate from the instructions, thereby voiding the warranty. Plaintiffs also claim that the warranty in effect in 1999-2001, which covers the named Plaintiffs, warned that Trimboard should not be exposed to lawn sprinklers and "rain." Plaintiffs argue this is a clear admission that Trimboard was not fit for exterior use. As a result, Plaintiffs argue the warranty was unconciosable under these circumstances. Plaintiff thus seeks remedies beyond the warranty under N.C. Gen. Stat. § 25-2-302 for an "unconscionable contract or clause."

The instant suit is one of three cases brought in the Carolinas against LP by owners of structures containing LP's Trimboard. The first two cases have already been certified as class actions by the United States District Court for the District of South Carolina. *Brunson v. Louisiana-Pacific Corp.*, 266 F.R.D. 112 (D.S.C. 2010); *Thomas v. Louisiana-Pacific Corp.*, 246 F.R.D. 505 (D.S.C. 2007). Both of these cases have been certified based upon virtually identical facts as those before this Court.

### III. DISCUSSION

---

[1] The warranties in effect for Trimboard during the class period have varied in that until January 2005, the remedy was limited to "twice the original purchase price of the affected trim," and after January 2005, the remedy was expanded to "the cost (as established by an independent cost estimator such as R. S. Means) of replacing any such failed product." *See* Complete set of ABTCO and LP Warranties and Instructions (Ex.13 hereto).

The Court finds that Plaintiffs have met all the requirements of a class action. Fed. R. Civ. P. 23(a) provides that one or more members of a class may sue as representatives of the class if,

(1) the class is so numerous that joinder of all members is impracticable,
(2) there are questions of law or fact common to the class,
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and
(4) the representative parties will fairly and adequately protect the interests of the class.

In addition, Plaintiffs must satisfy the requirements of one of the three sub-parts of Rule 23(b). Plaintiffs invoke Rule 23(b)(3), which provides that the Court must find: ". . . that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members of the class, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Sub-section (b)(3) requires courts to consider:

(A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions;
(B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;
(D) the difficulties likely to be encountered in the management of a class action.

*Id.*

Plaintiffs have the burden of showing that the elements of Rule 23 are satisfied. *See Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 322 (4th Cir. 2006); *Thomas*, 246 F.R.D. at 507. The class representatives, however, need not establish their case on the merits. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974). Nevertheless, some preliminary inquiry into the merits may be necessary for an intelligent determination of whether to certify the class. *See Shelton v. Pargo, Inc.*, 582 F.2d 1298, 1312-13 (4th Cir.1978).

A. Satisfying the prerequisites for a class action under Rule 23(a)

The Plaintiffs have satisfied the requirements of numerosity, commonality, typicality and the adequacy-of-representation.

a. Numerosity requirement

The Court finds that the proposed class is so numerous that joinder of all members in a single action is impracticable. Fed. R. Civ. P. 23(a)(1).

The numerosity requirement is satisfied as long as the Court can draw reasonable inferences from the facts as to the appropriate size of the class and impossibility of joinder. *Simpson v. Specialty Retail Concepts*, 149 F.R.D. 94, 98 (M.D.N.C.1993). Although there is no numerical minimum for satisfying the numerosity requirement, the Fourth Circuit has acknowledged that a class with as few as 18 class members satisfies the numerosity requirement. *Cypress v. Newport News General and Nonsectarian Hospital Ass'n*, 375 F.2d 648 (4th Cir. 1967).

Here, the Defendant does not challenge Plaintiff's satisfaction of Rule 23(a)(1). Indeed, based on LP's own records, Plaintiffs' expert has estimated there could be as many as 11,258 homes in this state containing defective Trimboard. Brown Aff., p. 6. Thus, the numerosity requirement is easily satisfied.

b. Commonality and Typicality

There are multiple questions of law and fact common to all the class members. Thus the commonality and typicality requirements are satisfied.

The requirements for typicality and commonality often merge. *See Kidwell v. Transp. Commc'ns Int'l Union*, 946 F.2d 283, 305 (4th Cir. 1991). "'The threshold requirements of

commonality and typicality are not high; Rule 23(a) requires only that resolution of the common questions affect all or a substantial number of the class members.'" *Brown v. Nucor Corp.*, 576 F.3d 149, 153 (4th Cir. 2009) (quoting *Shipes v. Trinity Indus.*, 987 F.2d 311, 316 (5th Cir. 1993)). A plaintiff's claim is typical if it arises from the same event, practice, or course of conduct that gives rise to the claims of other class members, and if the plaintiff's claim is based on the same legal theory as those of the other members. *See Haywood*, 109 F.R.D. at 578.

The commonality and typicality requirements may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of the other class members. *See Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 344 (4th Cir. 1998) ("We . . . do not suggest that the commonality and typicality elements of Rule 23 require that members of the class have identical factual and legal claims in all respects.").

Here, Plaintiffs have identified the following issues that are common to the class:

a. Whether Trimboard is defective in design and manufacture;

b. Whether the installation instructions for Trimboard were deficient;

c. Whether Trimboard has not performed or will not perform in accordance with the expectations of reasonable consumers;

d. Whether ABTCO knew or should have known of the defect;

e. Whether ABTCO concealed from consumers or failed to disclose to consumers that Trimboard was defective;

f. Whether ABTCO's limitations on the express warranty are unconscionable;

g. Whether the express warranty fails of its essential purpose;

h. Whether Plaintiffs and the proposed Class are entitled to compensatory damages, including, among other things:

> (i) compensation for all out-of-pocket monies expended by members of the Class for replacement of the Trimboard and/or installation costs;
>
> (ii) the failure of consideration in connection with and/or difference in value arising out of the variance between the Trimboard as warranted and themTrimboard containing the defect; and
>
> (iii) the diminution of the resale value of the residences resulting from the defects;

i. Whether Plaintiffs are entitled to replacement of their defective Trimboard with

SmartSide Trim or some other non-defective trimboard; and

j. Whether Plaintiffs and the proposed Class are entitled to restitution and/or disgorgement.

These common questions all relate to a course of alleged conduct by Defendant arising out of a common nucleus of operative facts, i.e., its producing and selling a defective product, its decision to continue to produce and market that product despite its knowledge of the defects, and its efforts to hide the nature of the defects from consumers. *See, e.g., Rosario v. Livaditus*, 963 F.2d 1013, 1018 (7th Cir. 1992) ("A common nucleus of operative fact is usually enough to satisfy the commonality requirement ...").

The Defendant argues that the common issues identified by Plaintiffs have little bearing on this case as they all involve Trimboard's alleged defect; Defendant argues that such a defect lacks significance as this is a breach of warranty claim, and not a negligence or product liability suit. However, Plaintiff alleges that the Defendant knew of the inherent defect, hid that defect from the public, and issued a one-sided warranty containing unconscionable terms that served only to limit liability. If this is the case, the Court may be empowered to alter the terms of that warranty or void it completely, and then award appropriate damages through N.C. Gen. Stat. § 25-2-302. Thus, Plaintiff have correctly identified a common set of facts and legal theory at play. As such, the commonality and typicality requirements are easily met.

c. <u>Adequacy-of-Representation Requirement</u>

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement consists of two components. First, the class counsel must be "qualified, experienced and generally able to conduct the proposed litigation." *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562 (2d Cir. 1968), *vacated on other grounds*, 417 U.S. 156 (1974). Second, the proposed class

representatives must be members of the class they purport to represent, and their interests must not be in conflict with those of the other class members. *See Amchem*, 521 U.S. at 625–26.

The Defendant does not dispute that counsel for Plaintiffs have sufficient experience to represent a class, and the Court finds that Plaintiffs' counsel possess the necessary qualifications.

The Defendant also does not dispute the second component of this prong. The Court finds that the proposed class representatives are proper members of the class and that they have similar interests to the rest of the class.

### B. Satisfying Rule 23(b)'s requirements

Having found that the prerequisites of Rule 23(a) are met, the next inquiry is whether Plaintiffs' action is also maintainable under Rule 23(b)(3).

Rule 23(b)(3) provides that a class action may be maintained if Rule 23(a) is satisfied and if: "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

Here, the Court finds that Plaintiffs satisfied both the predominance and superiority components of the rule.

#### a. Predominance

The predominance requirement is similar to but more stringent than the commonality requirement of Rule 23(a). *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 147, n. 4 (4th Cir. 2001). Under this Rule, Plaintiff must demonstrate that those issues that are common to the Class and Subclasses "predominate over" other questions. *Id.* "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. v. Windsor*, 521 U.S. 591, 623 (1997).

Here, the only real difference among proposed class members is the amount of Trimboard on their structures and the amount of their damages. However, "Rule 23 explicitly envisions class actions with such individualized damage determinations." *Gunnels v. Healthplan Servs., Inc.*, 348 F.3d 417, 428 (4th Cir. 2003). The parties dispute whether each potential Plaintiff would also need to provide LP notice under the warranty being filing suit. Even if notice were required, the common issues would still predominate.

### b. Superiority

In determining superiority under Rule 23(b)(3) the following four factors are considered:

(A) the interests of members of the class in individually controlling the presentation or defense of separate actions;
(B) the extent and nature of any litigation concerning the controversy already commenced by or against class members;
(C) the desirability or undesirability of concentrating the litigation of the claims in a particular forum; and
(D) the difficulties likely to be encountered in the management of a class action.

Given the relatively small amount of money involved in each individual class member's claim, there would be little or no interest on the part of any individual class member to control his or her own litigation. Plaintiffs state they are not aware of any other litigation concerning defective Trimboard in North Carolina. Defendant also states that no other suit has been filed in this state. (Tilley Aff. ¶ 17.)

Plaintiffs concede that potential plaintiffs are "dispersed throughout the state." (DE #75 at 27.) There is no indication however, that there would be another district that would be more suitable for the claims than the Eastern District of North Carolina.

The Court foresees no significant management problems in this case, and the Defendant suggests none.

9
Case 2:08-cv-00047-BO   Document 100   Filed 07/18/11   Page 9 of 10

Accordingly, the Court finds that the predominance and superiority requirements have been met. This action is thus maintainable as a Rule 23(b)(3) class action.

## IV. CONCLUSION

Based on the foregoing, Plaintiffs' Motion for Class Certification is GRANTED. The class is defined as:

> All persons in the State of North Carolina who own a home, office or other building in which ABTCO's Trimboard has been installed in the past ten years.
> Excluded from the Class are: (a) any Judge or Magistrate presiding over this action and members of their families; (b) LP and any entity in which LP has a controlling interest or which has a controlling interest in LP and all legal representatives, assigns and successors of ABTCO; and (c) all persons who properly execute and file a timely request for exclusion from the Class.

SO ORDERED, this ___15___ day of July, 2011.

>                                     _Terrence W. Boyle_
> TERRENCE W. BOYLE
> UNITED STATES DISTRICT JUDGE